# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD R. GARZA, JR.,** | : | |
|     **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-1179** |
| | : | |
| **CITY OF CHESTER PA,** *et al.*, | : | |
|     **Defendants.** | : | |

## MEMORANDUM

**RUFE, J.**                                                                                                                                                                                             **DECEMBER 28, 2021**

Plaintiff Edward R. Garza, proceeding *pro se* has filed suit concerning the conditions of his confinement and medical care he has received.[1] By Order dated December 20, 2021, the Court determined that Garza was not able to afford to pay the filing fee in this action and granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and stated that the case was still subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]

Garza initiated this case by submitting a letter Complaint that was docketed as the original Complaint in this action.[3] While that complaint was being screened, as required by 28 U.S.C. § 1915(e)(2)(B), Garza submitted an Amended Complaint,[4] a Second Amended Complaint,[5] and a Third Amended Complaint, which was submitted twice.[6] While each of these

---

[1] Third Am. Compl. [Doc. No. 35].

[2] See Order of Dec. 20, 2021 [Doc. No. 38].

[3] Compl. [Doc. No. 1].

[4] Am. Compl. [Doc. No. 12].

[5] Second Am. Compl. [Doc. No. 22]

[6] Third Am. Compl. [Doc. Nos. 35, 37].

documents addresses the same series of events, some are more comprehensive than others, and some appear to be attempts to supplement earlier pleadings.

As discussed in the Court's Order of December 17, 2021, the Court can only consider facts pled in the most recent Complaint and cannot assemble allegations from multiple complaints.[7] Garza's Third Amended Complaint—the most recently filed amended pleading—is the operative pleading in this case and the one subject to screening at this time. For the following reasons, the Third Amended Complaint will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Garza will be granted leave to file a fourth amended complaint.

I.   **FACTUAL ALLEGATIONS**[8]

Garza, a prisoner currently incarcerated at State Correctional Institution – Chester ("SCI Chester"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights with respect to his conditions of confinement at SCI Chester and the medical care he has received while incarcerated. Garza named the following Defendants in this action: (1) Kenneth Eason, acting Superintendent of SCI Chester; (2) Paul G. Little of WellPath Medical Contractors, the "head doctor" at SCI Chester; (3) Crozer-Chester Medical Center;[9] and (4) John

---

[7] *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("[A]n amended pleading supersedes the original pleading and renders the original pleading a nullity . . . [T]he most recently filed amended complaint becomes the operative pleading.").

[8] The facts set forth in this Memorandum are taken from Garza's Third Amended Complaint, which was docketed on December 10, 2021. Third Am. Compl. [Doc. No. 35]. The Court adopts the pagination supplied by the CM/ECF docketing system.

Two copies of the Third Amended Complaint were received by the Court and docketed. *See* Third Am. Compl. [Doc. Nos. 35, 37]. The Court will cite to the first copy of the Third Amended Complaint, Doc. No. 35.

[9] The Complaint refers to this Defendant as "Crozer Hospital"; however, the Court will refer to this Defendant by its proper name, Crozer-Chester Medical Center.

Wetzel, who served as Secretary of the Pennsylvania Department of Corrections at all periods relevant to Garza's complaint.[10]

Garza alleges that sometime prior to February 23, 2021, he broke his ankle.[11] On February 23, 2021, Garza was transferred from another prison to SCI Chester, and he asserts that during the transfer process, the "guards disregarded [his] condition" and "chained [him] on [his] ankles and refractured [his] ankle as [he] step[ped] off the prisoner transport bus [at] SCI Chester[.]"[12] Garza asserts that he was later "examined by Nurse Ford, Nurse Ackerman, and given crutches by head Nurse Bah Rahmatullah[.]"[13] Garza claims that his fellow inmates "helped [him] on to the top tier" of his housing unit while "C.O. Adams and Sgt. Brill disregarded [his] condition with [the] crutches."[14] Garza has not named Adams or Brill as Defendants. Garza alleges that he remained on the top tier of the housing unit for several more days, including February 25, 2021, when he was seen by Dr. Nicholson "for his condition[.]"[15]

According to the allegations of the Third Amended Complaint, on the evening of February 25, 2021, Garza "was given a phone call" sometime between 8:00 and 8:15 pm.[16] Garza alleges that he "approached the steps on the top tier and as [he] tried to go down[,] [he] fell, going head over heels landing uncons[c]ious and" breaking his right hand.[17] Garza asserts

---

[10] Third Am. Compl. [Doc. No. 35] at 1–2.

[11] Third Am. Compl. [Doc. No. 35] at 3.

[12] Third Am. Compl. [Doc. No. 35] at 3.

[13] Third Am. Compl. [Doc. No. 35] at 3.

[14] Third Am. Compl. [Doc. No. 35] at 3.

[15] Third Am. Compl. [Doc. No. 35] at 3.

[16] Third Am. Compl. [Doc. No. 35] at 3.

[17] Third Am. Compl. [Doc. No. 35] at 3.

3

that he was "put on to a stretcher and escorted to Crozer [H]ospital[.]"[18] Garza believes that as a result of his fall he "fractured [his] spine and . . . still [has] a broken hand."[19] Once at the Crozer Hospital Trauma Unit, Garza asserts that he "experienced harsh treatment and for some odd reason the acting doctor sodomized [him] in front of almost 10 people and took it as a joke while [he] screamed for help."[20] Garza alleges that as a result of the events of February 2021, he has spent the last ten months "in wheelchairs, walkers, [and] physical therapy" and that his hand is still broken.[21]

Based on these allegations, Garza seeks (1) a declaration that Defendants violated his Constitutional rights;[22] (2) injunctive relief directing Defendants to "proceed with proper adjustments to spine and fix [his] broken hand" without subjecting him to harassment or malicious acts;[23] and (3) $500,000 in compensatory damages and $500,000 in punitive damages.[24]

## II.   STANDARD OF REVIEW

As Garza has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Third Amended Complaint if it fails to state

---

[18] Third Am. Compl. [Doc. No. 35] at 3.

[19] Third Am. Compl. [Doc. No. 35] at 3.

[20] Third Am. Compl. [Doc. No. 35] at 4.

[21] Third Am. Compl. [Doc. No. 35] at 4.

[22] Third Am. Compl. [Doc. No. 35] at 5. "Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another." *See Corliss v. O' Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) (citations omitted); *see also Andela v. Admini. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Accordingly, Garza's request for a declaration that his rights were violated is improper and will be dismissed.

[23] Third Am. Compl. [Doc. No. 35] at 5.

[24] Third Am. Compl. [Doc. No. 35] at 6.

a claim.[25] Whether a complaint fails to state a claim is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[26] "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim.'"[27] Conclusory allegations are not sufficient to state a claim.[28] As Garza is proceeding *pro se*, the Court construes his allegations liberally.[29]

## III.   DISCUSSION

Garza's Third Amended Complaint explains that he seeks to bring claims for violations of his constitutional rights, including "deliberate indifference to [a] medical condition, unsafe conditions, and sexual discrimination."[30] Garza specifically alleges that his rights under the Eighth Amendment to be free from cruel and unusual punishment have been violated.[31]

---

[25] 28 U.S.C. § 1915(e)(2)(B)(ii).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying the Rule 12(b)(6) standard to assess a proceeding filed *in forma pauperis* under § 1915(e)(2)(B)).

[27] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

[28] *Iqbal*, 556 U.S. at 678.

[29] *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

[30] Third Am. Compl. [Doc. No. 35] at 4.

[31] Third Am. Compl. [Doc. No. 35] at 5.

Tort claims alleging violations of constitutional rights may be brought in federal court under Section 1983 of Title 42 of the United States Code. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[32] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[33] In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[34]

### A.     Claims Against Crozer-Chester Medical Center

Liberally construed, the Court understands Garza's Complaint to allege that the medical personnel who treated him at Crozer-Chester Medical Center were deliberately indifferent to his serious medical needs in violation of his constitutional rights. To state a claim under § 1983, the defendant must act under color of state law, meaning that the defendant "exercised power possessed by virtue of state law and made possible only because the [defendant] is clothed with the authority of state law.[35]

Whether a defendant is acting under color of state law depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may

---

[32] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[33] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'").

[34] *Iqbal*, 556 U.S. at 676.

[35] *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

be fairly treated as that of the State itself."[36] To answer that question, the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."[37]

Multiple courts in this Circuit have recognized that Crozer-Chester Medical Center is a private hospital and that the Medical Center and its employees are not state actors subject to liability under § 1983.[38] Here, Garza has not set forth facts to support his contention that Crozer-Chester Medical Center or its employees (none of whom are named as Defendants) meet any of the foregoing tests; therefore, he has failed to allege that Crozer-Chester Medical Center is a state actor subject to liability under § 1983.[39] Accordingly, the § 1983 claims against Crozer-Chester Medical Center will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. Garza will not be permitted to amend these claims as it appears that amendment would be futile.[40] The Court notes that the dismissal of the § 1983 claims does not affect

---

[36] *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quotations omitted).

[37] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quotations and alteration omitted).

[38] *See, e.g.*, *Klavan v. Crozer-Chester Med. Ctr.*, 60 F. Supp. 2d 436, 440–44 (E.D. Pa. 1999) (holding that Crozer-Chester Medical Center and its employees are not state actors under any applicable tests); *see also Schneller v. Crozer Chester Med. Ctr.*, Civ. A. No. 06-0698, 2009 WL 737337, at *6 (E.D. Pa. Mar. 19, 2009), *aff'd sub nom. Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289 (3d Cir. 2010) (dismissing claims against Crozer-Chester Medical Center because there was no state action).

[39] *Cf. Carver v. Plyer*, 115 F. App'x 532, 537 (3d Cir. 2004) (holding that a private hospital is not a state actor under applicable legal tests)

[40] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should be generally be granted "unless amendment would be inequitable or futile.").

Plaintiff's ability to assert any state-law claims, including allegations of assault, battery, or medical malpractice, against Crozier-Chester Medical Center or its employees in the appropriate state court.

### B. Claims Against Defendants Kenneth Eason and John Wetzel

Garza names Kenneth Eason, the acting Superintendent of SCI Chester, and John Wetzel, the former Secretary of the Pennsylvania Department of Corrections, as Defendants in this action. With respect to Eason, Garza asserts, in a conclusory fashion, that Eason is "legally responsible for [the] overall operation of the Department and each institution under [its] jurisdiction, including SCI Chester."[41] With respect to Wetzel, there are no allegations against him in the body of the Third Amended Complaint; he is only listed as a Defendant in the caption. In a § 1983 action, a plaintiff must allege how each defendant was personally involved in the events and alleged constitutional violation giving rise to the claims.[42]

To the extent Garza seeks to hold either Eason or Wetzel liable because of their supervisory roles at SCI Chester or within the Department of Corrections, respectively, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."[43] First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[44] "Second, a supervisor may be personally liable

---

[41] Third Am. Compl. [Doc. No. 35] at 2.

[42] *See Rode*, 845 F.2d at 1207; *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

[43] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

[44] *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).

8

under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[45] However, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are not sufficient to allege personal involvement in an underlying constitutional violation.[46]

In the Third Amended Complaint, Garza makes no allegations describing how either Superintendent Eason or Secretary Wetzel were personally involved, by way of their actions or inactions, with any alleged constitutional violations with respect to Garza's medical care or otherwise. Moreover, there is not a single allegation suggesting that either Eason or Wetzel established and maintained a policy, practice, or custom that resulted in an alleged violation of Garza's constitutional rights. Garza also does not allege any facts from which the Court could infer that either of these Defendants directed others to violate Garza's rights, or had knowledge of, and acquiesced in, unconstitutional conduct of their subordinates. Rather, Garza simply alleges that Eason is "legally responsible for [the] overall operation of the Department and each institution under [its] jurisdiction, including SCI Chester,"[47] and makes no allegations

---

[45] *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1995).

[46] *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'").

[47] Garza alleges that "[e]ach defendant is sued individually and in his official capacity." Third Am. Compl. [Doc. No. 35] at 2. To the extent the Third Amended Complaint brings claims for money damages against Eason or Wetzel in their official capacities as employees of the Pennsylvania Department of Corrections, those claims must be dismissed because they are essentially claims against the Commonwealth that are barred by the Eleventh Amendment. "Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309–10 (3d Cir. 2020). "Congress did not abrogate Eleventh Amendment immunity via § 1983" and Pennsylvania has not waived its immunity in federal court. *Id.* at 310; *see also* 42 Pa. Cons. Stat. § 8521–22. "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citations omitted). Since Garza's official capacity claims for damages against Department of Corrections officials and employees are barred by the Eleventh Amendment, the Court will dismiss those claims with prejudice pursuant to 28 U.S.C. §

whatsoever as to Wetzel.[48] Accordingly, Garza's claims against Superintendent Eason and Secretary Wetzel will be dismissed without prejudice for failure to state a claim. Garza will be granted leave to file a fourth amended complaint with respect to any potential claims against these Defendants.

### C. Claims Against Paul G. Little of WellPath Medical Contractors

The Court understands Garza's Third Amended Complaint as seeking to raise claims under the Eighth Amendment for deliberate indifference to his serious medical needs—specifically, his original ankle fracture and the injuries he incurred after his fall, and to the unsafe conditions of his confinement that culminated in his fall—specifically, being housed on the top tier when he was on crutches.[49]

#### 1. Deliberate Indifference to Medical Needs

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[50] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[51] "A medical need is serious . . . if it is one that has

---

1915(e)(2)(B)(ii) for failure to state a claim. To the extent Garza also seeks injunctive relief against these Defendants, the Eleventh Amendment does not necessarily preclude claims for injunctive relief. However, at this time, Garza has not alleged sufficient facts to state a plausible deliberate indifference claim against these Defendants in their official capacities. Accordingly, that claim will be dismissed without prejudice to amendment.

[48] Third Am. Compl. [Doc. No. 35] at 2.

[49] Third Am. Compl. [Doc. No. 35] at 4–5.

[50] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[51] *Id.* at 837.

been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[52] Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[53] A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death."[54] Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[55] Like other constitutional claims, deliberate indifference claims also require that the defendant "must have personal involvement in the alleged wrongs" to be liable.[56]

Garza has not alleged a plausible deliberate indifference claim with respect to Defendant Little. The Third Amended Complaint does not set forth any factual allegations demonstrating that Little had any personal involvement in, or awareness of, Garza's medical condition with respect to either his initial ankle fracture or his subsequent injuries after he fell down the steps from the top tier.[57] Garza simply alleges that Little is the "head doctor" at SCI Chester and he is

---

[52] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted).

[53] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[54] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

[55] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[56] *See Rode*, 845 F.2d at 1207.

[57] The Court notes that nearly all the factual allegations in Garza's Third Amended Complaint describe action or inaction by prison officials and medical personnel who are not named as Defendants in this action. While the Court construes Garza's allegations liberally, the Court is unable to speculate which individuals identified in passing in the Third Amended Complaint Garza might seek to hold liable under § 1983. If Garza chooses to file a fourth amended complaint, he is reminded that only those individuals or entities clearly identified in the caption of the fourth amended complaint will be considered defendants in this case and that he must clearly state the factual allegations that support a claim for relief against each defendant.

"legally responsible for the overall operation of SCI Chester's medical department and welfare of all inmates" including Garza.[58] These broad, conclusory statements are insufficient to state a plausible deliberate indifference claim against Little at this time. As noted above, supervisory defendants may not be held liable solely based on the acts of their subordinates or their high-level positions in a facility. Rather, they must have had some personal involvement in the underlying wrongs, and the Third Amended Complaint does not allege that Dr. Little was involved in the alleged violations of Garza's constitutional rights. Accordingly, the Court will dismiss these claims without prejudice and will grant Garza leave to file a fourth amended complaint to set forth sufficient factual allegations, if he is able, that would state a plausible claim against Little or any other specific medical personnel involved in his medical treatment and care.[59]

### 2. Deliberate Indifference to Unsafe Conditions of Confinement

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.[60] "Unconstitutional punishment typically includes both objective and

---

[58] Third Am. Compl. [Doc. No. 35] at 2.

[59] Little is sued in his official capacity as well as his individual capacity. Assuming the official capacity claims should be construed against WellPath, Little's employer, Garza has also failed to state a plausible claim. "[A] private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, to hold a private health care company like WellPath liable for a constitutional violation under § 1983, a plaintiff must allege that the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583–84; *see also Lomax v. City of Phila.*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) (citations and quotations omitted) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."). Garza's Third Amended Complaint makes no such allegation that there was a policy or custom in place by WellPath that resulted in a violation of his constitutional rights. Accordingly, the claim against Little in his official capacity—essentially a claim against WellPath—must be dismissed. However, as the Court cannot say at this time that Garza can never state a plausible claim against WellPath, the dismissal will be without prejudice, and he will be permitted an opportunity to file a fourth amended complaint if he can cure the defect the Court has identified.

[60] *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

subjective components."[61] The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"[62] In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.[63]

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities."[64] Such necessities include "food, clothing, shelter, medical care and reasonable safety."[65] A prisoner must also establish that the defendants acted with deliberate indifference.[66] A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation.[67]

While Garza couches his claim in terms of deliberate indifference to the unsafe conditions of his confinement, the Court reads this claim liberally to assert an Eighth

---

[61] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

[62] *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

[63] *See Seiter*, 501 U.S. at 298–99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) (quoting *Farmer*, 511 U.S. at 837) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'"); *Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) (citations omitted) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees.").

[64] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement.").

[65] *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).

[66] *Farmer*, 511 U.S. at 835.

[67] *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

Amendment claim for failing to prevent harm to Garza who was put on crutches but remained housed on the top tier in his housing assignment. "In order to state such a claim, 'an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" [68]

> To satisfy this requirement: (1) "objectively, the alleged deprivation must have been "sufficiently serious," in that the "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm;" and (2) subjectively, the prison official must have had a "sufficiently culpable state of mind" manifesting "deliberate indifference" to the inmate's health or safety."[69]

With respect to Little, the allegations of Garza's Third Amended Complaint are insufficient to set forth a plausible Eighth Amendment claim for failure to prevent harm with respect to his housing assignment on a top tier after being put on crutches. Garza does not set forth any allegations that Little himself, as opposed to other prison officials or medical personnel, had personal involvement in the decision to provide him with crutches when he fractured his ankle, or had any personal involvement in determining the appropriate housing assignment for him after he was put on crutches. Accordingly, the Court will dismiss this claim for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). However, it is possible that Garza could state a plausible claim under this legal theory if given the opportunity to set forth additional facts or to name additional Defendants.[70] Accordingly, Garza will be granted leave to file a fourth amended complaint on this issue.

---

[68] *See Ridgeway v. Smock*, Civ. A. No. 20-200, 2021 WL 1725045, at *7 (W.D. Pa. Apr. 7, 2021), *report and recommendation adopted*, 2021 WL 1723207 (W.D. Pa. Apr. 30, 2021) (quotations omitted).

[69] *Id.*

[70] *See Ridgeway*, 2021 WL 1725045, at *7 (denying corrections defendants' motion to dismiss for failure to state a claim where prisoner, suffering from a foot injury, was issued crutches but remained housed on the top tier of his housing unit and subsequently fell down a flight of steps injuring his lower back and requiring hospital treatment).

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Garza's Third Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The dismissal of Garza's Third Amended Complaint is without prejudice to Garza's right to file a fourth amended complaint in the event he can cure the defects outlined above and state a plausible claim against a defendant personally involved in the alleged violations of his constitutional rights. An appropriate Order follows.