IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. GARZA, JR. | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-1179 |
| | : | |
| WELLPATH MEDICAL, *et al.* | : | |
|     Defendants. | : | |

**MEMORANDUM**

**RUFE, J.**                                                                                                          **March 20, 2023**

Plaintiff Edward R. Garza, proceeding *pro se*, has filed this lawsuit regarding the conditions of his confinement and medical care he received at State Correctional Institution Chester ("SCI Chester"). Defendants now move to dismiss the Fifth Amended Complaint. For the reasons described below, Lieutenant Brill and former Corrections Officer Adams' Motion to Dismiss is denied, Wellpath Medical and John Nicholson, PA's Motion to Dismiss is granted, and Bah Rahmatullah, LPN's Motion to Dismiss is granted.[1]

**I.    BACKGROUND**

Garza initiated this case by submitting a letter Complaint that was docketed as the original Complaint in this action.[2] While that complaint was being screened, as required by 28

---

[1] Lieutenant Brill and former Corrections Officer Adams are collectively referred to as the "Commonwealth Defendants," while Wellpath Medical, John Nicholson, PA, and Bah Rahmatullah, LPN are collectively referred to as the "Medical Defendants" in this Memorandum.

[2] Compl. [Doc. No. 1].

U.S.C. § 1915(e)(2)(B), Garza submitted an Amended Complaint,[3] a Second Amended Complaint,[4] and a Third Amended Complaint, which was submitted twice.[5]

By Order dated December 20, 2021, the Court determined that Garza could not afford to pay the filing fee in this action and granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and stated that the case was subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). By Memorandum and Order dated December 28, 2021, the Court screened Garza's Third Amended Complaint, the most recently filed pleading at the time. The Third Amended Complaint alleged deliberate indifference to Garza's serious medical needs and conditions of confinement, and named the following Defendants: (1) Kenneth Eason, acting Superintendent of SCI Chester; (2) Paul G. Little of Wellpath Medical Contractors, the "head doctor" at SCI Chester; (3) Crozer-Chester Medical Center; and (4) John Wetzel, who served as Secretary of Pennsylvania Department of Corrections at all periods relevant in the Third Amended Complaint. The Court dismissed the Third Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).[6] The Court granted Garza leave to file a Fourth

---

[3] Am. Compl. [Doc. No. 12].

[4] Second Am. Compl. [Doc. No. 22].

[5] Third Am. Compl. [Doc. Nos. 35, 37].

[6] Specifically, the Court dismissed the claims against Crozer-Chester Medical Center with prejudice, holding that Garza failed to allege that Crozer-Chester Medical Center was a state actor subject to liability under 42 U.S.C. § 1983. The Court dismissed the claims against Superintendent Eason and Secretary Wetzel without prejudice, holding that Garza did not plead allegations describing how either defendant was personally involved in the alleged constitutional violations, nor did he allege that either defendant maintained a policy, practice, or custom that violated his rights. Finally, the Court dismissed the claims against Dr. Little without prejudice, holding that Garza failed to plead that Dr. Little was personally involved in the alleged violations of his constitutional rights. As Dr. Little was sued in both his official and individual capacities, the Court construed the official capacity claims against his employer, Wellpath Medical. The Court found that the Third Amended Complaint did not state a plausible claim against Wellpath Medical and denied the claim without prejudice. *See generally* Mem. of Dec. 28, 2021 [Doc. No. 41].

Amended Complaint "in the event he [could] cure the defects outlined [in the Memorandum] and state a plausible claim against a defendant personally involved in the alleged violations of his constitutional rights."[7]

Garza filed his Fourth Amended Complaint on January 10, 2022, and days later, filed yet another "Amended Complaint" on January 14, 2022. As noted in the Court's Order dated May 18, 2022, Garza's Fifth Amended Complaint—the most recently filed amended pleading—is the operative pleading in this case.

## II.   FACTUAL ALLEGATIONS[8]

Garza, who was formerly incarcerated at SCI Chester, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights with respect to his conditions of confinement at SCI Chester and the medical care he received. The following Defendants are named in the Fifth Amended Complaint: (1) the City of Chester;[9] (2) Wellpath

---

[7] Mem. of Dec. 28, 2021 [Doc. No. 41] at 15.

[8] The facts set forth in this Memorandum are taken from Garza's Fifth Amended Complaint. *See* Fifth Am. Compl. [Doc. No. 45].

[9] In an Order dated May 18, 2022, the Court dismissed Garza's claims against the City of Chester for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as the Fifth Amended Complaint named the City of Chester as a Defendant only in the caption but did not contain any substantive allegations against the City of Chester. *See* Order of May 18, 2022 [Doc. No. 49].

Medical; (3) John Nicholson, PA;[10] (4) Bah Rahmatullah, LPN; (5) former Correctional Officer Adams; and (6) Lieutenant Brill.

Garza alleges that sometime prior to February 23, 2021, he suffered an ankle fracture that impacted his ability to walk. On February 23, 2021, Garza was transferred to SCI Chester, where Rahmatullah gave him crutches for his injury. After speaking with Adams about his injury, Garza alleges that Adams "didn't care" about his condition and "forced [him] to go onto the top tier with crutches."[11] Garza also alleges that he asked for a sergeant or "someone that was higher in rank" but was denied, and that his fellow inmates "helped [him] up to the top tier."[12]

On February 25, 2021, Garza alleges that he met with Nicholson, who came to Garza's cell on the top tier and examined his ankle. Garza also asserts that he spoke with Brill, who informed him that he "would be moving to the bottom tier where [he] would be safe and where [he] would be medically cleared for."[13]

On the evening of February 25, 2021, Garza "was given a phone call" sometime between 8:00 and 8:15 pm.[14] Garza claims that he "approached the steps with [his] crutches and [he] fell from the top tier landing unconcious [sic] hurting [his] spine and breaking [his] right hand."[15]

---

[10] John Nicholson, PA avers that he is incorrectly identified as "Dr. Nicholson" in Garza's Fifth Amended Complaint.

[11] Fifth Am. Compl. [Doc. No. 45] at ECF page 4.

[12] Fifth Am. Compl. [Doc. No. 45] at ECF page 4.

[13] Fifth Am. Compl. [Doc. No. 45] at ECF page 4.

[14] Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

[15] Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

Garza was then taken to the Crozer-Chester Medical Center, where he was allegedly sexually sodomized in the presence of "a crowd" of unnamed correctional officers.[16] Garza asserts that he "left that hospital without any cast for [his] hand and without any help whatsoever for [his] back."[17] Finally, Garza contends that he "used the prisoner grievance procedure available at SCI Chester to try and solve the problem."[18]

Garza seeks (1) a declaration that Defendants violated his Constitutional rights;[19] (2) a preliminary and permanent injunction directing Nicholson and Rahmatullah to provide "physical therapy for [his] spine and to correct the break in [his] right hand and correctly set [his] fracture";[20] (3) compensatory damages in the amount of $500,000 against each defendant, jointly and severally; (4) punitive damages in the amount of $500,000 against each defendant; and (5) Garza's costs in this suit.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[16] Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

[17] Fifth Am. Compl. [Doc. No. 45] at ECF pages 4, 5.

[18] Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

[19] As stated in this Court's Memorandum and Opinion dated December 28, 2021, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another." *See Corliss v. O' Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) (citations omitted); *see also Andela v. Admin. Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Accordingly, Garza's request for a declaration that his rights were violated is improper and will be dismissed.

[20] Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

plausible on its face."²¹ "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim."²² Conclusory allegations are not sufficient to state a claim.²³ As Garza is proceeding *pro se*, the Court construes his allegations liberally.²⁴

## IV. DISCUSSION

The Court understands Garza to allege two types of Eighth Amendment violations: (1) deliberate indifference to serious medical needs, and (2) deliberate indifference to the conditions of confinement.²⁵ Tort claims alleging violations of constitutional rights may be brought in federal court under Section 1983 of Title 42 of the United States Code. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."²⁶ "A defendant in a civil rights action must have personal involvement

---

²¹ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying the Rule 12(b)(6) standard to assess a proceeding filed *in forma pauperis* under § 1915(e)(2)(B)).

²² *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

²³ *Iqbal*, 556 U.S. at 678.

²⁴ *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

²⁵ *See* Fifth Am. Compl. [Doc. No. 45] at ECF pages 2-4.

²⁶ *West v. Atkins*, 487 U.S. 42, 48 (1988).

in the alleged wrongs" to be liable.[27] In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[28]

### A. The Commonwealth Defendants' Motion to Dismiss

The Commonwealth Defendants move to dismiss the claims against them on the grounds that Garza failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[29] However, if prison staff prevents a prisoner from taking advantage of administrative procedures, then that procedure is not considered "available."[30]

In support of their motion to dismiss, the Commonwealth Defendants attach the Declaration of Madeline A. Quinn, the Faculty Grievance Coordinator for SCI Chester (the

---

[27] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'").

[28] *Iqbal*, 556 U.S. at 676.

[29] 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 206 F.3d 289, 300 (3d Cir. 2000) (holding that a plaintiff-inmate must exhaust his or her administrative remedies).

[30] *See Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (alleging security officials told plaintiff to wait for termination of their investigation before starting a claim but never notified plaintiff their investigation ended, thereby making the procedure unavailable to plaintiff).

7

"Quinn Declaration").[31] The Quinn Declaration states that Garza filed two grievances relating to his fall, but neither was appealed.[32] The Commonwealth Defendants assert that "[w]ithout having appealed his grievances to [Secretary's Office of Inmate Grievances and Appeals ("SOIGA")], a final determination was never issued by SOIGA for the relevant grievances."[33] In his opposition to the Motion to Dismiss, Garza submits multiple new exhibits, alleges that Quinn "purposely botche[d] the grievance process," and avers that he attempted to appeal through Deputy Aponte.[34]

     A plaintiff only fails to state a claim for relief for failure to exhaust when non-exhaustion is apparent from the face of the Complaint.[35] On a motion to dismiss, courts generally may not consider evidence presented outside of the pleadings without converting the motion to a summary judgment motion,[36] though courts may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[37] Nevertheless, a court cannot consider "copies of [a plaintiff's] grievances and appeals, the Department of Corrections' responses to them, [or] declarations from grievance

---

[31] Quinn Decl. [Doc. No. 57-1].

[32] Quinn Decl. [Doc. No. 57-1] at ¶¶ 9-11.

[33] Commw. Defs.' Mem. L. Supp. Mot. Dismiss [Doc. No. 57] at 8 (citation omitted).

[34] Pl.'s Opp. Commw. Defs.' Mot. Dismiss [Doc. No. 65] at ECF pages 7, 8, 11.

[35] *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

[36] Fed. R. Civ. P. 12(d); *Pension Benefits Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

[37] *Pension Benefits Guar. Corp,* 998 F.2d at 1196.

coordinators."[38] "Even if the grievances, appeals, and responses are indisputably authentic . . . declarations are evidentiary materials that cannot be considered on a motion to dismiss."[39]

Accordingly, the Court does not determine at this time whether Garza properly exhausted his administrative remedies, which is the only issue raised by the Commonwealth Defendants. As the Commonwealth Defendants have not addressed the merits of the Fifth Amended Complaint, and the Court does not determine whether exhaustion is satisfied, the Motion to Dismiss is denied.

### B. The Medical Defendants' Motions to Dismiss[40]

The Medical Defendants move to dismiss both on the merits and on the grounds that Garza failed to exhaust his administrative remedies. They submit the Verification of Keri Moore from SOIGA, which asserts that there are no grievance records appealed to final review involving Wellpath Medical or Nicholson (the "Moore Verification").[41] As discussed above, the Court cannot consider the Moore Verification at the motion to dismiss stage.[42] Accordingly, the Court will consider the merits of the claims against the Medical Defendants.

---

[38] *Berry v. Klem*, 283 F. App'x 1, 3-4 (3d Cir. 2008).

[39] *Id.* at 4.

[40] The Medical Defendants have submitted two motions to dismiss: one of behalf of Wellpath Medical and Nicholson, and one on behalf of Rahmatullah. Given that Nicholson and Rahmatullah are both employees of Wellpath Medical, the Court considers the motions together.

[41] Moore Verification [Doc. No. 63-3].

[42] Moreover, the Court notes that the Moore Verification only pertains to Wellpath Medical and Nicholson, and not Rahmatullah. While Rahmatullah is an employee of Wellpath Medical, Garza could have filed a grievance specifically naming her and *not* Wellpath Medical.

1.      **Deliberate Indifference to Serious Medical Needs**

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[43] "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[44] Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[45] Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[46]

The allegations against the Medical Defendants are brief. The Fifth Amended Complaint alleges that Rahmatullah gave Garza crutches after he transferred to SCI Chester. In his opposition to her motion to dismiss, Garza further argues that "[b]ecause Bah Rahmatullah administered crutches without the proper housing instructions and orders, Garza almost lost his life falling down the steps."[47] Garza also claims that Rahmatullah "has administered medications

---

[43] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[44] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted).

[45] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[46] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[47] Pl.'s Mot. Opp. Rahmatullah's Mot. Dismiss [Doc. No. 86] at ECF page 5.

to Garza on more than one occasion."[48] With respect to Nicholson, Garza alleges that he visited Garza's cell and examined his ankle. In his opposition to the motion to dismiss, Garza further alleges that Nicholson "would be the SECOND defendant to contact and physically deal with inmate Garza," and that he allowed "Garza to 'keep the crutches' and even providing Garza with a 'chair' in the cell to better accommodate inmate Garza's condition."[49] Garza argues that "Nicholson clearly knew that Garza had a condition that indeed required assistance since Garza had a history with the Dept. of Corrections since '2014' whereas Garza always had an assisted walking device . . . ."[50]

Critically, the Fifth Amended Complaint is devoid of allegations that either Nicholson or Rahmatullah: (1) knew of Garza's need for medical treatment but intentionally refused to provide it; (2) delayed necessary medical treatment based on a non-medical reason; or (3) prevented Garza from receiving needed or recommended medical treatment.[51] Rather, it appears that Nicholson and Rahmatullah provided Garza with additional accommodations for his ankle injury. Further, there are no allegations that Nicholson or Rahmatullah had any personal involvement in, or awareness of, Garza's injuries after he fell down the stairs, or the subsequent events that took place at Crozer-Chester Medical Center. To the extent that Garza argues he should have received additional care for his spine and back, it appears from the Fifth Amended

---

[48] *Id.*

[49] Pl.'s Mot. Opp. Defs.' Mot. Dismiss [Doc. No. 67] at ECF page 3.

[50] *Id.*

[51] *See Rouse*, 182 F.3d at 197.

Complaint that the hospital staff determined that no care was necessary.[52] This is a difference in medical opinion, which does not amount to an Eighth Amendment violation.[53] Thus, the Fifth Amended Complaint does not state a claim that Nicholson or Rahmatullah were deliberately indifferent to Garza's medical needs.

      Garza's claims against Wellpath Medical also fail. Wellpath Medical is "a private health company providing service to inmates," which "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."[54] In order to hold Wellpath liable for a constitutional violation under § 1983, the plaintiff must allege that the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."[55] Garza appears to name Wellpath as a defendant because it employs the medical providers at SCI Chester such as Nicholson and Rahmatullah. However, he did not cure the deficiency in his Third Amended Complaint[56] and failed to identify any relevant policy that caused him constitutional injury. Because there are no specific allegations directed against Wellpath, the claims against Wellpath will be dismissed.

---

[52] *See* Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

[53] *See Spruill*, 372 F.3d at 235.

[54] *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quotations omitted).

[55] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

[56] *See* Mem. of Dec. 28, 2021 [Doc. No. 41] at 12 n.59.

## 2. Deliberate Indifference to Conditions of Confinement

With respect to Garza's prison condition allegations, the Medical Defendants argue that Garza cannot establish claims against them under the Americans with Disability Act ("ADA")[57] or the Rehabilitation Action ("RA").[58] However, the Court understands the Fifth Amended Complaint as asserting claims of deliberate indifference to conditions of confinement—specifically, that they failed to prevent harm to him, given that he was housed on the top tier despite needing crutches.[59] "In order to state such a claim, an 'inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'"[60] More specifically, to satisfy this requirement:

> (1) objectively, the alleged deprivation must have been "sufficiently serious," in that the "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm;" and (2) subjectively, the prison official must have had a "sufficiently culpable state of mind" manifesting "deliberate indifference" to the inmate's health or safety.[61]

---

[57] "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[58] "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

Under the ADA or the RA, a plaintiff must allege that "(1) he is a qualified individual; (2) [he has] a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity;" and (4) that such denial or discrimination was by reason of his disability. *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007).

[59] *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

[60] *Ridgeway v. Smock*, No. 20-200E, 2021 WL 1725045, at *7 (W.D. Pa. Apr. 7, 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), *R. & R. adopted by* 2021 WL 1723207 (W.D. Pa. Apr. 30, 2021).

[61] *Spillman v. Kollman*, No. 18-1568, 2019 WL 4930141 (M.D. Pa. Oct. 7, 2019) (quoting *Farmer*, 511 U.S. at 834).

In this case, Garza merely alleges that Rahmatullah gave him crutches and that Nicholson inspected his ankle. Garza does not set forth any allegations that Rahmatullah or Nicholson had any involvement in determining the appropriate housing assignment for him. There are no allegations that Rahmatullah knew he was assigned to the top tier. To the extent Garza argues that Nicholson, once he visited his cell, should have requested he be assigned to a lower tier, this argument does not hold water. Indeed, Brill informed Garza that he *would* be moving to a lower tier. Finally, Garza has not identified any policy of Wellpath Medical's that contributed to the alleged conditions of confinement. Accordingly, the Fifth Amended Complaint does not state a claim of deliberate indifference to conditions of confinement as to the Medical Defendants.

### 3.  **Sexual Discrimination**

Garza makes a brief reference to "sexual discrimination" in the Fifth Amended Complaint.[62] The Medical Defendants argue that there are no allegations of any discrimination; the only allegations regarding anything sexual in nature are the events at Crozer-Chester Medical Center, but Garza does not allege that any of the Medical Defendants were involved. While Garza refers to "sexual discrimination," the Fifth Amended Complaint is devoid of allegations describing discrimination. Accordingly, any sex discrimination claim that Garza may purport to assert also fails.

---

[62] *See* Fifth Am. Compl. [Doc. No. 45] at ECF page 5.

### V.     MOTION TO STRIKE

Wellpath Medical and Nicholson's Motion to Strike Garza's sur-reply is dismissed as moot, as the arguments raised in Garza's sur-reply do not impact the Court's decision on their Motion to Dismiss.

### V. CONCLUSION

For the foregoing reasons, the Commonwealth Defendants' Motion to Dismiss is denied, Wellpath Medical and Nicholson's Motion to Dismiss is granted, Rahmatullah's Motion to Dismiss is granted, and Wellpath Medical and Nicholson's Motion to Strike Garza's Sur-Reply is dismissed as moot. Garza's Motion to Oppose Defendants' Motion to Dismiss the Fifth Amended Complaint and Motion to Oppose Defendant Bah Rahmatullah's Motion to Dismiss, which the Court construes as Garza's responses in opposition to the Motions to Dismiss, are dismissed as moot. An order will follow.